**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

**CIVIL CASE NO. 3:09cv44**

| | | |
|---|---|---|
| **LANCE MFG, LLC and** | ) | |
| **ARCHWAY BAKERIES, LLC,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **O R D E R** |
| | ) | |
| **VOORTMAN COOKIES** | ) | |
| **LIMITED,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Plaintiffs' Motion for Preliminary Injunction filed February 24, 2009 [Doc. 6]; the Plaintiffs' Motion to Expedite Hearing on Motion for Preliminary Injunction, filed February 24, 2009 [Doc. 8]; and the Plaintiff's Motion with Consent for Leave to File Additional Evidence in Support of Motion for Preliminary Injunction [Doc. 20].

## I.    PROCEDURAL HISTORY

On February 6, 2009, the Plaintiffs Lance Mfg., LLC and Archway Bakeries, LLC (collectively "Lance") filed a Complaint against the Defendant Voortman Cookies Limited ("Voortman"), asserting claims for (1) a violation

of the Lanham Act, 15 U.S.C. §1125(a), for false designation of origin; (2) common law trademark infringement and unfair competition; and (3) violations of the Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§75-1.1, *et. seq.* The Complaint seeks compensatory damages as well as preliminary and permanent injunctive relief. [Doc. 1].

An Affidavit of Service filed on February 13, 2009, indicates that Voortman was served with process on February 12, 2009. [Doc. 5]. On March 3, 2009, Voortman filed a Motion for Extension of Time to File an Answer. [Doc. 10]. That Motion was granted, and Voortman's Answer is due on March 24, 2009.

On February 24, 2009, Lance filed the present Motion for Preliminary Injunction and a Motion to Expedite Hearing on Motion for Preliminary Injunction. [Docs. 6, 8]. A preliminary injunction hearing was held on March 19, 2009. This matter is now ripe for disposition.


## II.    FACTUAL BACKGROUND

Archway® has been a well-known premium brand of packaged cookies in the United States for many years. Company records indicate that the brand

was first introduced in 1954 by what was then Swanson's Cookie Co.[1]  The

company pioneered the retail sale of packaged "soft" cookies, which, though

having a shorter shelf life, were moister and were perceived by consumers as

closer to "home baked" than most other commercial cookies of the day.

[Declaration of Mark Carter ("Carter Decl."), Doc. 6-2 at ¶6].   The first cookie

introduced under the Archway brand was its original oatmeal cookie, and the

oatmeal cookie flavors (including oatmeal raisin) remain the most popular

Archway cookies, accounting for approximately thirty percent of total Archway

sales.  [Id. at ¶8].  Archway cookies have been immensely successful in the

marketplace, and over the ensuing decades, the brand has continued to grow.

By the early 2000s, annual sales of Archway cookies exceeded $120 million

in the United States.   Annual sales faltered after 2004 due in part to

management issues that led to the bankruptcy filing in late 2008 that is

described below.  [Id. at ¶7].

---

[1]While these "company records" have not been shown to be records of regularly
conducted business activity so as to be admissible under Fed. R. Evid. 803(6), such
evidence nevertheless may be considered at this stage of the proceedings.  See
American Angus Ass'n v. Sysco Corp., 829 F.Supp. 807, 816 (W.D.N.C. 1992)
("Hearsay evidence may be considered in a preliminary injunction hearing.").

At least since 2005, Archway cookies have appeared on retail shelves in packaging (the "Archway Package" or "Archway trade dress")[2], which contains the following elements:

- Red horizontal stripes on the upper and lower portions of the package outside the central label.

- Two tones of red used as background and accent colors.

- Gold trim on banners and other graphic elements.

- White lettering with gold borders.

- A central red ribbon-like scroll with gold trim displaying the product variety (such as "oatmeal").

- A gold-trimmed bright red banner across the top edge of the main label, notched around a medallion displaying the brand name.

- A light-colored background with white and light yellow gradients radiating from behind the logo medallion in a sunbeam effect.

---

[2]"Trade dress" consists of "the total image of the product, and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 764 n.1, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (quoting John H. Harland Co. v. Clarke Checks, Inc., 711 F.2d 966, 980 (11th Cir. 1983)). Registration of trade dress is not required for protection under section 43(a). See 15 U.S.C. §1125(a)(3); Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 209-10, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000).

- Photographs of portions of three cookies arranged against the left, right and bottom sides of the main label.

[Id. at ¶18; Carter Decl. Ex. 1, Doc. 60-2 at 12]. Prior to 2005, the packaging for Archway cookies differed from the current Archway Package in various particulars at various times, but the most salient elements of the Archway Package have been used continuously for decades. [Carter Decl., Doc. 60-2 at ¶18].

On October 8, 2008, Archway Cookies, LLC, filed a petition to reorganize pursuant to Chapter 11 of the Bankruptcy Code. While Archway products were never withdrawn from the market, Archway's manufacturing and distribution networks were disrupted, resulting in reduced inventories in stores and widespread speculation as to whether the business would continue to operate. [Id. at ¶¶9, 10, 14; Declaration of Adrian Voortman ("Voortman Decl."), Doc. 11-2 at ¶9]. Under the auspices of the United States Bankruptcy Court for the District of Delaware, and pursuant to the United States Bankruptcy Code, an auction of the business assets of Archway Cookies, LLC was conducted in late 2008, with the preference being expressed by the trustee and creditors committee that the assets be sold to a single buyer who would continue to operate the Archway business as a going concern. [Carter Decl., Doc. 6-2 at ¶15]. Lance was the successful bidder in the auction, and

on December 8, 2008, completed the purchase of all the tangible and intangible assets of Archway Cookies, LLC, including all intellectual property rights and customer goodwill, for $31,075,000. [Id. at ¶13; Declaration of Joseph B.C. Kluttz ("Kluttz Decl."), Doc. 20-2 at ¶6; Kluttz Decl. Ex. 2, Doc. 20-2 at 14].[3]

Defendant Voortman has been a longtime direct competitor of Archway, selling packaged cookies under its Voortman brand. Prior to November 2008, Voortman's products always had appeared in packages creating a completely different and easily distinguishable commercial impression from that of the Archway Package. [Carter Decl., Doc. 6-2 at ¶¶21, 23; Carter Decl. Ex. 4, Doc. 6-2 at 18]. In November 2008, however, Voortman introduced and began to offer for sale soft oatmeal and soft oatmeal raisin cookies in a new type of packaging (the "Voortman Package"). The Voortman Package bears the Voortman brand and logo and includes the following design elements:

- Red horizontal stripes on the upper and lower portions of the package outside the central label.

- Two tones of red used as background and accent colors.

---

[3]Lance sought leave to file the Kluttz Declaration the day after the preliminary injunction hearing. Voortman does not oppose the Court's consideration of this Declaration. [Doc. 20 at 2].

- Gold trim on banners and other graphic elements.

- White lettering with gold borders.

- A central red ribbon-like scroll with gold trim displaying the product variety (such as "oatmeal").

- A gold-trimmed bright red banner across the top edge of the main label, notched around a medallion displaying the Voortman logo.

- A light-colored background with white and light yellow gradients radiating from behind the logo medallion in a sunbeam effect.

- Photographs of portions of three cookies arranged against the left, right and bottom sides of the main label.

[Carter Decl. Ex. 3, Doc. 6-2 at 16]. Oatmeal and oatmeal raisin cookies in the Voortman Package have been and are still being offered and sold in retail stores in this judicial district, as well as elsewhere in the United States. [Carter Decl., Doc. 6-2 at ¶22].

Shortly after acquiring the Archway brand, Lance notified Voortman that it took issue with Voortman's new packaging. As early as January 13, 2009, Voortman expressed a willingness to change the Voortman Package. [Voortman Decl., Doc. 11-2 at ¶¶12, 13]. By February 5, 2009, Voortman had stopped producing the allegedly infringing Voortman Package. [Id. at ¶14].

In mid-February 2009, Voortman modified the packaging for its oatmeal and oatmeal raisin cookies (the "Modified Voortman Package") to replace the allegedly infringing Voortman Package. [Id. at ¶17; Voortman Decl. Ex. 3, Doc. 11-2 at 9].

Although Voortman has begun production of the Modified Voortman Package, cookies packaged in the Voortman Package remain on store shelves and in possession of Voortman's distributors. The last date that Voortman shipped cookies in the allegedly infringing Voortman Package was on February 5, 2009. [Voortman Decl., Doc. 11-2 at ¶14]. The parties agree that soft-baked cookies have a typical shelf life of 100 days. Thus, any cookies sold in the Voortman Package will be cleared from store shelves at the latest by approximately May 16, 2009.

Prior to the filing of this lawsuit, Voortman expended over $5,000 to revise the Voortman Package. [Voortman Decl., Doc. 19 at ¶3]. Stopping the production of the Voortman Package further cost the company $7,500 in unusable packaging material. [Id. at ¶5]. Voortman has presented evidence that requiring the company to contact its independent distributors and instruct them to pull packages of Voortman cookies from store shelves would cause the company to incur losses of approximately $120,000 due to lost sales and credits to its distributors. [Id. at ¶6].

## III.   STANDARD OF REVIEW

In the Fourth Circuit, the entry of a preliminary injunction is governed by the four-part test set forth in Blackwelder Furniture Co. of Statesville, Inc. v. Seilig Mfg. Co., 550 F.2d 189 (4th Cir. 1977), which requires a court to consider the following four elements: "(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the injunction is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest." Scotts Co. v. United Industries Corp., 315 F.3d 264, 271 (4th Cir. 2002) (quoting Direx Israel, Ltd. v. Breakthrough Med. Corp., 952 F.2d 802, 812 (4th Cir. 1999)); Blackwelder, 550 F.2d at 193-95. "When deciding whether to grant a preliminary injunction, the court must first determine whether the plaintiff has made a strong showing of irreparable harm if the injunction is denied; if such a showing is made, the court must then balance the likelihood of harm to the plaintiff against the likelihood of harm to the defendant." Scotts Co., 315 F.3d at 271. If the court determines that "the balance of hardships tips decidedly in favor of the plaintiff, then typically it will be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them fair ground for litigation and thus for more deliberate investigation." Id. (citations and internal quotation marks omitted)   If, however, the balance of

hardships is substantially equal between the parties, "then 'the probability of success begins to assume real significance, and interim relief is more likely to require a clear showing of a likelihood of success.'" Id. (quoting Direx Israel, Ltd., 952 F.2d at 808).

## IV.   DISCUSSION

As an initial matter, Voortman argues that Lance's request for injunctive relief should be denied as moot, as all of the cookies packaged in the allegedly infringing Voortman Package "have been removed" and are "no longer in use" by Voortman, and because Voortman has agreed that it "will not reintroduce these packages into the marketplace in the future." [Doc. 11 at 5,6]. Accordingly, Voortman argues, there simply is no viable legal issue left to resolve, and Lance's request for injunctive relief should be denied. [Id.].

Lance counters that its request for injunctive relief is not moot, as the allegedly infringing Voortman Packages are still on store shelves and in the possession of Voortman distributors and thus are continuing to cause Lance injury. [Doc. 16 at 2-5].

As the Fourth Circuit has stated, "it is well established that a voluntary discontinuance of challenged activities by a defendant does not necessarily moot a lawsuit." Lyons P'ship, L.P. v. Morris Costumes, Inc., 243 F.3d 789,

800 (4th Cir. 2001) (quoting <u>United States v. Jones</u>, 136 F.3d 342, 348 (4th Cir. 1998)).  One exception to this well-established rule is that a request for injunctive relief may be rendered moot where "there is no reasonable expectation that the wrong will be repeated." <u>Lyons</u>, 243 F.3d at 800 (quoting <u>United States v. W.T. Grant Co.</u>, 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed.2d 1303 (1953)).  Defendants bear a "heavy burden" in establishing mootness "because otherwise they would simply be free to return to their old ways after the threat of a lawsuit has passed."  <u>Lyons</u>, 243 F.3d at 800 (quoting <u>Iron Arrow Honor Soc'y v. Heckler</u>, 464 U.S. 67, 72, 104 S.Ct. 373, 78 L.Ed.2d 894 (1983) (per curiam)).

In the present case, Voortman has not met its "heavy burden" of showing that Lance's request for injunctive relief is moot.  While Voortman has ceased production of the allegedly infringing Voortman Package, Voortman has not shown that it would be unable to resume such production in the future and thus has not established that "there is no reasonable expectation that the wrong will be repeated."  <u>See</u> <u>Lyons</u>, 243 F.3d at 800. Furthermore, Voortman admits that cookies packaged in this allegedly infringing packaging are still on store shelves and in the possession of its

distributors.[4]  Thus, at the very least, there is an issue as to whether Lance will suffer irreparable injury in the future as a result of the allegedly infringing products that are still in the marketplace.  For these reasons, the Court finds that the injunctive relief requested by Lance has not been rendered moot by the Defendant's actions in ceasing production of the Voortman Package. Accordingly, the Court will now turn to the merits of the Plaintiffs' request for injunctive relief.

The first step in deciding whether to grant a preliminary injunction is to determine whether the plaintiff has made a strong showing of irreparable harm in the absence of injunctive relief.  See Scotts Co., 315 F.3d at 271. The Fourth Circuit has held that, in the context of a Lanham Act trademark infringement action, "a presumption of irreparable injury is generally applied once the plaintiff has demonstrated a likelihood of confusion, the key element in an infringement case."  Id. at 273.  Lance has asserted in this case that there is a likelihood of confusion between the parties' products; as such, the issue of the "likelihood of irreparable harm" is necessarily intertwined with the merits of the underlying infringement action.  Accordingly, before balancing the hardships of the parties, the Court must first address the substance of

_____

[4]In light of this fact, for Voortman to suggest as it does in its brief that the Voortman Package "has been removed" and "is no longer in use" [Doc. 11 at 5, 6] is simply disingenuous.

Lance's Lanham Act claim in order to determine whether the Plaintiffs have made an adequate showing of a likelihood of confusion in this case.  See id. at 272.[5]

In order to prove a claim for trade dress infringement under the Lanham Act, a plaintiff must show that: "(1) its trade dress is primarily non-functional; (2) the alleged infringement creates a likelihood of confusion; and, (3) the trade dress either (a) is inherently distinctive, or (b) has acquired a secondary meaning."  Ashley Furniture Industries, Inc. v. SanGiacomo N.A. Ltd., 187 F.3d 363, 368 (4th Cir. 1999).

Generally speaking, trade dress is considered non-functional if it is not essential to the use or purpose of the product or if it does not affect the cost or quality of the product.  See Qualitex Co. v. Jacobson Products Co., 514 U.S. 159, 165, 115 S.Ct. 1300, 131 L.Ed.2d 248 (1995).  A party asserting a

---

[5]As a preliminary matter, Voortman argues that Lance has no rights in the trade dress it is seeking to enforce in this case, as the Archway trade dress at issue was not conveyed to Lance when it purchased the assets of Archway.  [Doc. 11 at 7-8].  In response to Voortman's argument, Lance has submitted the Declaration of Joseph B.C. Kluttz, who represented Lance in the acquisition of the Archway assets.  [Kluttz Decl., Doc. 20-2 at ¶2].  In his Declaration, Kluttz states that, in conjunction with the Asset Purchase Agreement between Archway and Lance, Archway executed an Assignment of Trademarks, which assigned to Lance all of Archway's "registered and unregistered domestic service marks, trademarks, *trade dress*, service mark applications, trademark applications, trade dress applications and trade names . . . ." [Id. at ¶6; Kluttz Decl. Ex. 2, Doc. 20-2 at 14] (emphasis added).  In light of the Assignment of Trademarks executed by Archway, Voortman's argument that Lance does not own the unregistered trade dress at issue must be rejected.

claim for the infringement of an unregistered trade dress "has the burden of proving that the matter sought to be protected is not functional." 15 U.S.C. § 1125(a)(3). In the present case, the Archway trade dress consists of an arbitrary combination of colors and graphic elements that is neither essential to use of the goods nor relevant to their cost or quality, but rather allows consumers to easily recognize Archway cookies and distinguish them from other products. Accordingly, the Court finds that the Archway trade dress is non-functional.

Next, the Court must determine whether the Archway trade dress is distinctive. A trademark, including trade dress, may achieve distinctiveness in one of two ways. First, a mark may be considered inherently distinctive. Inherent distinctiveness arises where the intrinsic nature of the product "serves to identify a particular source." Wal-Mart Stores, Inc., 529 U.S. at 210, 120 S.Ct. 1339 (quoting Two Pesos, 505 U.S. at 768, 112 S.Ct. 2753). Even if a mark is not inherently distinctive, a mark may be considered distinctive if it has developed secondary meaning." Wal-Mart Stores, Inc., 529 U.S. at 211, 120 S.Ct. 1339 Secondary meaning "occurs when, 'in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself.'" Id. (quoting Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 851 n.11, 102 S.Ct. 2182, 72 L.Ed.2d 606

(1982)). "If a particular product's trade dress has acquired a secondary meaning, then the consuming public associates that product with a certain producer, and, most importantly, is likely to make that association when the trade dress is used on another producer's product." M. Kramer Mfg. Co. v. Andrews, 783 F.2d 421, 449 (4th Cir. 1986).

In the present case, the Archway packaging trade dress includes the following elements: red horizontal stripes on the upper and lower portions of the package outside the central label; two tones of red used as background and accent colors; gold trim on banners and other graphic elements; white lettering with gold borders; a gold-trimmed bright red banner across the top edge of the main label, notched around a medallion displaying the brand name; a light-colored background with white and light yellow gradients radiating from behind the logo medallion in a sunbeam effect; and photographs of portions of three cookies arranged against the left, right and bottom sides of the main label. Of particular distinction is a central red ribbon-like scroll with gold trim that displays the product variety, such as "oatmeal" or "oatmeal raisin." While Voortman argues that these features are several non-distinctive elements that are commonly used by other cookie manufacturers [Doc. 11 at 9-10], the fact that these elements may be commonly used is not dispositive. "[T]rade dress is the 'total image' of a

product, and thus, the relevant inquiry is not whether the individual components of a design are common or not, but rather whether the alleged trade dress as a whole is inherently distinctive." Ashley Furniture, 187 F.3d at 373. Viewing the elements as a whole, the Court finds that Lance has shown that it is likely to succeed in proving that the Archway trade dress creates an overall impression that is distinctive and thus subject to protection under § 43(a) of the Lanham Act.

Additionally, Lance has presented evidence that the Voortman Package was an intentional copy of the Archway trade dress. The Fourth Circuit has held that "evidence of intentional, direct copying establishes a prima facie case of secondary meaning . . . ." Kramer, 783 F.2d at 448. The rationale for this rule is that "when a defendant copies the trademark of a competitor, it is likely that he intended to appropriate some commercial advantage or benefit that his competitor derived from the use of the mark." Id. at 499.

In the present case, the Voortman Package is nearly identical to the Archway Package, incorporating the same elements of red horizontal stripes on the upper and lower portions of the package outside the central label; two tones of red used as background and accent colors; gold trim on banners and other graphic elements; white lettering with gold borders; a central red ribbon-like scroll with gold trim displaying the product variety (such as "oatmeal"); a

gold-trimmed bright red banner across the top edge of the main label, notched around a medallion displaying the brand name; a light-colored background with white and light yellow gradients radiating from behind the logo medallion in a sunbeam effect; and photographs of portions of three cookies arranged against the left, right and bottom sides of the main label. Indeed, absent the medallion and logo identifying the particular company, these packages would be virtually indistinguishable.

The timing of the Voortman Package also suggests that it was an intentional copy. As Defendant's principal Adrian Voortman explained in his Declaration, Archway's bankruptcy and the dwindling of Archway inventory in some grocery stores led the company to conclude that Archway had abandoned its trademarks and trade dress. [Voortman Decl., Doc. 11-2 at ¶¶9, 10]. Shortly after Archway filed for bankruptcy, Voortman changed the packaging of its oatmeal and oatmeal raisin brand cookies, resulting in an overall package that looks remarkably similar to the Archway packaging. Given this sequence of events, it appears that Voortman intentionally copied the Archway trade dress, believing it had been abandoned, in order to appropriate the commercial advantage that Archway had derived from the use of its distinctive packaging. See Kramer, 783 F.2d at 449. For these reasons,

the Court concludes that the presumption of secondary meaning would apply in this case.

In light of the evidence that the Voortman Package was an intentional copy of the Archway trade dress, the Court further finds that Lance has made an adequate showing of a likelihood of confusion between the Voortman Package and the Archway trade dress. "[C]ourts have almost unanimously presumed a likelihood of confusion upon a showing that the defendant intentionally copied the plaintiff's trademark or trade dress." Larsen v. Terk Technologies Corp., 151 F.3d 140, 149 (4th Cir. 1998). Because Lance has shown a likelihood of confusion between Voortman's Packaging and the Archway trade dress, there is a presumption of irreparable harm to the Plaintiffs. See Scotts Co., 315 F.3d at 273.

Having found that there is a likelihood of irreparable harm to Lance in the absence of an injunction, the Court now must consider the likelihood of harm to Voortman if an injunction is granted. The entry of an injunction prohibiting Voortman from producing the infringing packaging in the future would not result in any appreciable harm, as Voortman already has ceased production of the infringing package. The Court must also consider, however, the potential harm to Voortman if the company were required to remove the infringing packages from the marketplace. Voortman has presented evidence

that pulling the infringing inventory from store shelves will cost the company approximately $120,000 in lost sales and credits to its distributors. According to Voortman, it last shipped cookies in the infringing package on February 5, 2009. As these cookies have a typical shelf life of only 100 days, the infringing packages will be cleared from store shelves by May 16, 2009. To require Voortman to expend thousands of dollars to prevent further trade dress infringement for only a matter of a few weeks would be a significant financial burden.

Weighing the hardships of the parties, and considering the likelihood of the Plaintiffs succeeding on the merits of their trade dress infringement claim, the Court finds that the balance tips in favor of the Plaintiffs in this case. Accordingly, an injunction shall be entered prohibiting Voortman from further infringing the Archway trade dress by marketing the Voortman Package. In light of the relatively short time period that the infringing products will remain in the marketplace and the financial burden that Voortman would incur in removing these products, however, the Court finds that the injunction should be narrowly tailored so as to allow Voortman to sell off its available supply of cookies that are already in the marketplace -- that is, on store shelves or in the possession of its distributors. "Allowing such a sell-off of infringing goods avoids the wastefulness of extensive relabeling or trashing the existing stock

of goods bearing an infringing mark."  5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:3 (4th ed. 2008); Attrezzi, LLC v. Maytag Corp., 436 F.3d 32, 42 (1st Cir. 2006) (allowing willful infringer a 12-month sell-off period for its existing stock of kitchen appliances bearing the infringing mark).  Such a narrowly-tailored injunction will minimize the harm to the parties while adequately serving the public interest.  See Resorts of Pinehurst, Inc. v. Pinehurst Nat'l Corp., 148 F.3d 417, 423 (4th Cir. 1998) (recognizing public interest in preventing confusion and mistake arising from misleading marks).

To further minimize the potential harm to Voortman, the Court also will require Lance to post a bond to cover any additional costs incurred by Voortman in complying with this narrow injunction, should Voortman ultimately prevail.  See Scotts, 315 F.3d at 285.

Finally, Lance contends in its reply brief that the injunction should extend to prohibit Voortman from using the Modified Voortman Package, on the grounds that this modified packaging "carries forward several identifiable elements" of the Archway trade dress.  [Doc. 16 at 5].  To the extent that Lance seeks to further restrict Voortman's packaging activities or to limit or control Voortman's introduction of new packages, these issues are not properly before the Court.  The Court will note, however, that the Modified

Voortman Package is significantly different from the Archway trade dress, in that it features red and blue horizontal stripes, blue lettering with white and red borders, and a photograph of two whole cookies arranged against the right side of the main label. [See Voortman Decl. Ex. 3, Doc. 11-2 at 9]. Most notably, the Modified Voortman Package does not contain a ribbon-like scroll in the center panel displaying the variety of the product, which is a distinctive feature of the Archway trade dress. As such, the Modified Voortman Packaging presents a markedly different overall impression than the packaging which has been enjoined. Going forward, Lance will have a heavy burden in showing that this modified packaging violates the narrow preliminary injunction entered in this case.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Plaintiffs' Motion for Expedited Hearing on Motion for Preliminary Injunction [Doc. 8] is **GRANTED.**

**IT IS FURTHER ORDERED** that the Plaintiffs' Motion with Consent for Leave to File Additional Evidence in Support of Motion for Preliminary Injunction [Doc. 20] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiffs' Motion for Preliminary Injunction [Doc. 6] is hereby **GRANTED** as follows:

1. The Defendant Voortman Cookies Limited, its directors, officers, employees, representatives and agents, and any persons or entities in active concert or participation with them having actual notice of this Preliminary Injunction, are hereby **ENJOINED** from any advertising, distribution, offering for sale, sale, distribution or shipping of the Voortman Package. Subject to the posting of an appropriate bond, this injunction shall be in effect from **May 16, 2009** until further Order from this Court.

2. The Defendant shall have until **March 26, 2009** to provide evidence to the Court regarding the damages that it may reasonably suffer if it is ultimately found to have been improperly enjoined.

3. The Plaintiffs shall have until **March 30, 2009** to file any response to the Defendant's filing.

4. Once the parties have submitted their supplemental filings, the Court shall enter an Order directing the Plaintiffs to post a security bond with the Clerk of Court for the United States District Court for the Western District of North Carolina for the payment of such costs and damages as may be incurred by the Defendant should it ultimately be found to have been wrongfully enjoined. The injunction stated herein shall become effective only upon such posting.

**IT IS SO ORDERED.**

Signed: March 24, 2009

Martin Reidinger
United States District Judge